Tuesday        2nd
            February, 1999.


Phillip Clay,                                        Appellant,

  against      Record No. 2227-97-1
              Circuit Court No. CR97-777

Commonwealth of Virginia,                            Appellee.


                Upon a Petition for Rehearing En Banc

      Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
          Elder, Bray, Annunziata, Overton*, Bumgardner and Lemons


        On December 22, 1998 came the appellee, by counsel, and

filed a petition praying that the Court set aside the judgment

rendered herein on December 15, 1998, and grant a rehearing en banc

thereof.

        On consideration whereof, the petition for rehearing en banc

is granted, the mandate entered herein on December 15, 1998 is stayed

pending the decision of the Court en banc, and the appeal is

reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35.

 It is further ordered that the appellee shall file with the clerk of

this Court ten additional copies of the appendix previously filed in

this case.

_____

       \*Judge Overton participated in the decision of this petition for rehearing en banc prior to the effective date of his retirement on January 31, 1999 and thereafter by his designation as senior judge pursuant to Code § 17.1-401, recodifying Code § 17-116.01:1.

A Copy,

    Teste:

        Cynthia L. McCoy, Clerk

    By:

        Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Lemons
Argued at Norfolk, Virginia


PHILLIP CLAY
                                          OPINION BY
v.        Record No. 2227-97-1        JUDGE LARRY G. ELDER
                                        DECEMBER 15, 1998
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    John K. Moore, Judge

            (William L. Taliaferro, Jr.; Rabinowitz,
            Rafal, Swartz, Taliaferro & Gilbert, on
            brief), for appellant.  Appellant submitting
            on brief.

            Daniel J. Munroe, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Phillip Clay (appellant) was convicted in a bench trial of

two counts of robbery and two counts of the related use of a

firearm in the commission of robbery.  On appeal, he contends

that the evidence was insufficient to prove he committed two

robberies rather than one and that the second firearm conviction,

contingent upon the second robbery conviction, therefore also

must fail.  For the reasons that follow, we agree and reverse the

challenged robbery and related firearm convictions.

                              I.

                            FACTS

     On November 17, 1996, William Vandegrift and Jason Guise

were walking from a grocery store to Vandegrift's house in the

City of Virginia Beach when they heard a car approaching them

from behind.  Appellant and Khayree Darton exited the car, approached Vandegrift and Guise, and asked, "Don't we know you?"

Vandegrift continued walking toward his house.  Guise stopped and began talking with appellant and Darton.  Guise then called Vandegrift to come back.  Vandegrift returned to where the three were standing.  Vandegrift and Guise both testified that appellant pointed a small handgun at Guise's chest and said, "Just give me all your stuff."  Appellant removed Guise's coat from his body.  Then appellant turned the gun toward Vandegrift as Darton patted Vandegrift down, but Vandegrift "didn't have nothing on [him]."

Both Vandegrift and Guise testified that, when appellant took Guise's coat, it contained two twenty-dollar bills belonging to Vandegrift, which Guise was holding for him.  Vandegrift testified that when appellant pointed the pistol at Guise, Vandegrift and Guise were standing "almost shoulder to shoulder."  Appellant and Darton then returned to their car with Guise's jacket and drove away.

Detective John Mentus interviewed appellant three days later.  Detective Mentus testified that appellant admitted he and several friends had approached Vandegrift and Guise with the intention of obtaining money and that he had used a gun to take Guise's coat.

At trial, appellant testified that he had been riding in a car with Darton and two other men.  Appellant denied having a gun

or participating in the robbery of Vandegrift and Guise and said he did not make the statements that Detective Mentus attributed to him.

## II.

## ANALYSIS

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

> The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide.  However, whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law.

Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986).

Robbery is a larceny from the person accomplished by violence or intimidation.  See Butts v. Commonwealth, 145 Va. 800, 811, 133 S.E. 764, 766 (1926); Nelson v. Commonwealth, 12 Va. App. 268, 270, 403 S.E.2d 384, 386 (1991) (defining larceny); see also Graves v. Commonwealth, 21 Va. App. 161, 167, 462 S.E.2d 902, 905 (1995), aff'd on reh'g en banc, 22 Va. App. 262, 468 S.E.2d 710 (1996) (holding that simple larceny is a lesser-included offense of robbery).  The common law defines robbery as "'[1] the taking, with intent to steal, [2] of the

personal property of another, [3] from his person or in his presence, [4] against his will, by violence or intimidation.'" Jordan v. Commonwealth, 2 Va. App. 590, 595, 347 S.E.2d 152, 155 (1986) (quoting Johnson v. Commonwealth, 215 Va. 495, 496, 211 S.E.2d 71, 72 (1975)).  In order to constitute robbery, the property taken need not belong to the possessor, as long as the possessor has a claim of right to the property that is superior to that of the robber.  See Johnson, 215 Va. at 496, 211 S.E.2d at 72.

Appellant does not challenge the sufficiency of the evidence to prove he robbed Guise of his jacket and its contents.  Rather, he challenges the separate conviction for robbing Vandegrift, which was based on the presence of the forty dollars of Vandegrift's money in Guise's coat at the time of the robbery. Appellant contends the evidence was insufficient to prove he (1) took property from Vandegrift's person or presence; (2) used the threat of force or intimidation to effect the taking; and (3) acted with the requisite intent because he did not know Vandegrift's money was in Guise's jacket.

We agree with appellant's third contention--that the evidence failed to prove he intended to rob Vandegrift by taking Guise's jacket.

> To constitute robbery, the act must be done with a specific criminal intent existing at the time of the commission of the act. . . .  If the criminal intent did not exist when the alleged offense was committed, the crime has not been established.  The intent subsequent to the taking is immaterial.

Jones v. Commonwealth, 172 Va. 615, 618-19, 1 S.E.2d 300, 301 (1939) (emphasis added). "When a criminal offense consists of an act and a particular [intent], both the act and [intent] are independent and necessary elements of the crime that the Commonwealth must prove beyond a reasonable doubt." Hunter v. Commonwealth, 15 Va. App. 717, 721, 427 S.E.2d 197, 200 (1993) (en banc).

Proving intent by direct evidence is often impossible. See Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). Like any other element of a crime, it may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it. See Rice v. Commonwealth, 16 Va. App. 370, 372, 429 S.E.2d 879, 880 (1993). Circumstantial evidence of intent may include the conduct and statements of the alleged offender, and "[t]he finder of fact may infer that [he] intends the natural and probable consequences of his acts." Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc). In addition, whether an accused has knowledge of particular facts when he engages in certain conduct or a motive to engage in that conduct may be relevant in determining intent, even where knowledge and motive are not elements of the offense. See Charles E. Friend, The Law of Evidence in Virginia § 12-6 (4th ed. 1993); see also Robinson v. Commonwealth, 228 Va. 554, 558, 322 S.E.2d 841, 843 (1984) ("'[B]efore a fact or circumstance is admissible in evidence

- 7 -

against a party to show motive, such fact or circumstance must be shown to have probably been known to him, otherwise it could not have influenced him, for a man cannot be influenced or moved to act by a fact or circumstance of which he is ignorant.'" (quoting Mullins v. Commonwealth, 113 Va. 787, 789-90, 75 S.E. 193, 195 (1912)).

Because robbery requires proof of a simple larceny in addition to other elements, see Graves, 21 Va. App. at 167, 462 S.E.2d at 905, principles of law relevant to larceny find equal application here. Ordinarily, in proving a larceny, proof of "the wrongful taking of property in itself imports the animus furandi" or the intent to steal, Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977), and the fact finder "may infer the [criminal] intent from the immediate asportation and conversion of the property in the absence of satisfactory countervailing evidence by the . . . [defendant]." Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 31 (1964). This principle is based on the inference, set out above, that one intends the natural and probable consequences of his acts.

However, under the facts of this case, we hold that the inference of intent to steal that arises from the wrongful taking of property establishes only a single, wrongful intent co-existing with the taking. To hold that the taking of a single item from the actual possession of a single victim--which item, unbeknownst to the robber, happens to contain property that is

owned by some other person present at the scene and that remains constructively in that other person's possession--also implies the _animus_ _furandi_ to support a second robbery conviction would improperly relieve the Commonwealth of its burden of proving intent to steal from the second victim.

Here, the record contains no evidence permitting the inference that appellant intended to take property belonging to more than one person by the single act of taking Guise's jacket. The evidence showed that appellant and Darton had discussed obtaining money from Guise and Vandegrift before approaching them on the street and that Darton patted Vandegrift down while appellant held both victims at gunpoint, permitting the inference that appellant and Darton may have intended to rob Vandegrift directly.[1] However, the pat down of Vandegrift yielded nothing. Although Vandegrift retained _constructive_ possession of the money, it was in Guise's _actual_ possession, inside his coat, at

---

[1]The evidence may have been sufficient to prove attempted robbery of Vandegrift. An attempt consists of the intent to commit the crime and the doing of some direct, ineffectual act toward the commission of the offense. See _Sizemore v. Commonwealth_, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). Here, the fact finder may have been presented with ample evidence of appellant's intent to rob Vandegrift at the time Vandegrift was first confronted by the two men. The act of patting down Vandegrift may have provided sufficient evidence of a direct, ineffectual act toward the commission of the robbery of Vandegrift. However, the evidence fails to show that appellant intended to rob Vandegrift when he took Guise's jacket or, in the words of the dissent, that appellant's _intent to steal from Vandegrift_ "actuated" the taking of Guise's jacket. Rather, the evidence shows only that _intent to steal from Guise_ actuated the taking of the jacket.

the time of the taking.  Therefore, the mere fact of its taking does not permit the inference that appellant intended to rob Vandegrift by taking Guise's jacket.  Evidence that appellant knew Vandegrift's property was in Guise's jacket may have supported the inference that appellant intended to rob Vandegrift as well as Guise when he took Guise's jacket.  However, the record here is devoid of any evidence that appellant had such knowledge.  Therefore, the evidence is insufficient to prove appellant intended to rob Vandegrift when he took Guise's jacket.

Such a result does not conflict with this Court's holdings in Jordan, 2 Va. App. 590, 347 S.E.2d 152, and Sullivan v. Commonwealth, 16 Va. App. 844, 433 S.E.2d 508 (1993) (en banc). As this Court held in Jordan, "the appropriate 'unit of prosecution' is determined by the number of persons from whose possession property is taken separately by force or intimidation."  2 Va. App. at 596, 347 S.E.2d at 156 (emphasis added) (analyzing whether actions of accused constituted one robbery or two for purposes of resolving double jeopardy challenge).  In Jordan, we upheld the two robbery convictions of the accused because, although he took money belonging to only one entity--a fast-food restaurant--he used threats to obtain separate quantities of the restaurant's money from two different employees.  Id. at 597, 347 S.E.2d at 156.  Jordan forced one employee to "turn over the money in a cash register" and another employee to "turn over [the restaurant's] money from [the

employee's] pockets."  Id.  Under the facts of that case, we held, "the evidence clearly show[ed] that both employees were subjected to the threat of violence by the presenting of firearms as money was taken from each of them."  Id. (emphasis added).

In Sullivan, we rejected a double jeopardy challenge to dual robbery convictions where the accused robbed two video store employees.  Although only one employee actually "physically surrendered" the money, both employees "were custodians of the store's money and jointly possessed it," and the accused forced both "to assist in the collection and surrender of the money." 16 Va. App. at 848, 433 S.E.2d at 510.

Because Jordan involved two actual takings of money from two individuals with a superior claim of right to the money through the use of violence or intimidation, the evidence proved that the accused intended two takings, even though the money belonged to a single entity.  Likewise, we held in Sullivan that the evidence was sufficient to prove the accused intended two robberies and accomplished two takings, even though only one employee actually "physically surrendered" the money.  The accused had constructive knowledge that the two video store employees had a superior claim of right to their employer's money, and he forced one employee to help the second employee gather the store's money from various locations.  In appellant's case, in contrast to Jordan and Sullivan, the evidence was insufficient to prove a second robbery because it did not prove appellant intended to take any of

Vandegrift's property contemporaneously with the taking of Guise's coat.

For these reasons, we reverse appellant's convictions for robbing Vandegrift and for using a firearm in the commission of that robbery.

Reversed.

Lemons, J., dissenting.

Because the evidence and the law support the convictions, I dissent.

Clay argues that the evidence was insufficient as a matter of law to sustain his convictions for robbery of Vandegrift and use of a firearm in the commission of that robbery. Specifically, Clay argues: (1) no threat of force or intimidation was used against Vandegrift; (2) no property was taken from Vandegrift's person or presence; and (3) because he did not know Vandegrift's money was contained in the jacket, he did not have the requisite criminal intent.

When the sufficiency of the evidence is an issue on appeal, an appellate court must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990). On appeal, the decision of a trial court sitting without a jury is afforded the same weight as a jury's verdict and "will not be disturbed by us unless plainly wrong or without evidence to support it." King v. Commonwealth, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977).

Robbery is a common law crime against the person, which is proscribed statutorily by Code § 18.2-58. Hairston v. Commonwealth, 2 Va. App. 211, 214, 343 S.E.2d 355, 357 (1986). Robbery at common law is defined as,

the taking, with the intent to steal, of the personal property of another, from his person or in his presence, against his will, by

> violence or intimidation. The phrase, ". . . of the personal property of another, from his person or in his presence . . ." has been broadly construed to include the taking of property from the custody of, or in the actual or constructive possession of, another.

Crawford v. Commonwealth, 217 Va. 595, 597, 231 S.E.2d 309, 310 (1977) (quoting Johnson v. Commonwealth, 215 Va. 495, 496, 211 S.E.2d 71, 72 (1975)).

Clay's contention that no threat of force or intimidation existed to support the conviction for robbery of Vandegrift and the related charge of use of a firearm in the commission of that robbery is belied by sufficient evidence in the record. Not only did Clay point a firearm at Guise while Vandegrift was standing "almost shoulder to shoulder," Clay also pointed the weapon at Vandegrift while Darton conducted a "pat down" of Vandegrift.

Clay argues that when he removed Guise's jacket he did not rob Vandegrift because he did not take property from Vandegrift's person or presence. For common law robbery, "the taking must be from what is technically called the 'person'; the meaning of which . . . is, not that it must be from . . . actual contact . . .[with] the person, but it is sufficient if it is from . . . [that person's] personal protection and presence." Falden v. Commonwealth, 167 Va. 542, 546, 189 S.E. 326, 328 (1937) (quoting Houston v. Commonwealth, 87 Va. 257, 264, 12 S.E. 385, 387 (1890)). The term "in the presence" is "not so much a matter of eyesight as it is one of proximity and control: the property

- 15 -

taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber, he could have prevented the taking." LaFave, Wayne R. & Scott, Jr., Austin W., Criminal Law § 8.11, at 780 (2d ed. 1986).

Clay argues that because he did not know the jacket contained Vandegrift's money, he lacked the criminal intent to rob Vandegrift. In Jordan v. Commonwealth, 2 Va. App. 590, 347 S.E.2d 152 (1986), we upheld the defendant's convictions of two counts of robbery and two counts of the use of a firearm in the commission of a felony. In Jordan, the defendant forced several employees of a fast-food restaurant to turn over their employer's money. We held that, although the money taken belonged to the restaurant, the defendant's multiple robbery convictions arising from this incident did not violate the double jeopardy prohibition. Rather, we held that the appropriate "unit of prosecution" was determined by the number of persons from whose possession property is taken separately by force or intimidation. Id. at 596, 347 S.E.2d at 156 (emphasis added). Similarly, we found that the firearm convictions were "separate and distinct offenses." Id. at 596, 347 S.E.2d at 156.

In Sullivan v. Commonwealth, 16 Va. App. 844, 433 S.E.2d 508 (1993), we upheld the defendant's convictions of two counts of robbery and two counts of the use of a firearm in the commission of robbery where two employees of a video store were held at

- 16 -

gunpoint but only one employee gathered the money and delivered it to the defendant.  We found that both employees were "custodians of the store's money and jointly possessed it."  Id. at 848, 433 S.E.2d at 510.  Additionally, in Pritchard v. Commonwealth, 225 Va. 559, 562, 303 S.E.2d 911, 913 (1983), the Virginia Supreme Court affirmed a robbery conviction and stated that "[t]he owner of personal property may deliver it to another upon conditions, or in circumstances, which give the recipient bare custody of the property.  Constructive possession remains in the owner."  (Emphasis added).

Larceny is a lesser-included offense of robbery.  Harris v. Commonwealth, 23 Va. App. 311, 477 S.E.2d 3 (1996).  Larceny is defined as "the wrongful or fraudulent taking of personal goods of some intrinsic value belonging to another, without his assent and with the intention to deprive the owner thereof permanently." Cullen v. Commonwealth, 13 Va. App. 182, 186, 409 S.E.2d 487, 489 (1991).  The animus furandi, or the intent to steal, "is an essential element in the crime of larceny."  Black's Law Dictionary 88 (6th ed. 1990).

In Virginia, "the wrongful taking of property in itself imports the animus furandi."  Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977).  Under the common law of Virginia, animus furandi means "an intent to feloniously deprive the owner permanently of his property . . . [b]ut 'feloniously' in this [context] simply means 'with criminal intent.'"  Pierce

- 17 -

v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 31 (1964). The fact finder "may infer the felonious intent from the immediate asportation and conversion of the property, in the absence of satisfactory countervailing evidence by the . . . [defendant]." Id. at 533, 138 S.E.2d at 31.

Clay argues that there was only one taking; consequently, there can be only one robbery. He is wrong; two takings occurred. The taking of the jacket from Guise was the first taking. The taking of Vandegrift's money in the jacket pocket was the second taking. In the second taking, Guise had bare custody of the money; Vandegrift retained constructive possession. Additionally, the animus furandi in the second robbery is provided by Clay's clearly demonstrated intent to take items from both Guise and Vandegrift and is further supported by Clay's demand "[j]ust give me all your stuff" followed by a "pat down" of Vandegrift. Finally, the animus furandi is provided by inference from the asportation and conversion of the property, in the absence of satisfactory countervailing evidence introduced by the defendant.

The majority concludes "the evidence was insufficient to prove a second robbery because it did not prove appellant intended to take any of Vandegrift's property contemporaneously with the taking of Guise's coat." The majority misapprehends a basic concept in criminal law. The issue is not whether the mens rea and the actus rea are contemporaneous; rather, it is whether

- 18 -

the mens rea and the actus rea concur.  However, "concurrence in time . . . is neither required nor sufficient; the true meaning of the requirement that the mental fault concur with the act or omission is that the former actuates the latter."  See LaFave & Scott, supra at 267–68 (emphasis added).  The rule is that "mere coincidence in point of time is not necessarily sufficient, while the lack of such unity is not necessarily a bar to conviction." Id. at 268.

Where the state of mind to commit a criminal act exists before the act is committed, in order to find the requisite concurrence that actuates the commission of the act, the actor's state of mind must not have been abandoned.  Id. at 270.  An example of abandonment of criminal intent exists where A intends to kill B but changes his mind.  If A mistakenly shoots B moments later in a hunting accident, he will not be guilty of murder because "there is no concurrence of the mental and physical elements."  Id.  Once the mental state has been abandoned, it can no longer actuate the commission of the crime and no concurrence exists.

When Clay and Darton approached Vandegrift and Guise, Clay had the intent to rob both men.  Clay pointed a handgun at Guise and said, "[j]ust give me all your stuff."  Clay then took Guise's jacket.  Clay turned to Vandegrift and pointed the gun at him as Darton "patted him down."  Clay intended to rob both Vandegrift and Guise of their possessions and his state of mind

was not abandoned at the time he committed the physical act of taking Guise's jacket that contained Vandegrift's money. Clay's mental state actuated the taking, and his intent to rob both men was never abandoned; therefore, Clay is guilty of the robbery of Vandegrift as well as Guise.

The evidence was sufficient to find that Clay robbed Vandegrift and that he used a firearm in the commission of that robbery. Clay used a gun to intimidate Vandegrift and to take Vandegrift's property from his presence. Clay intended to take the money contained in the jacket, as shown by the circumstances and by the taking itself, and as further shown by his statements to Guise, Vandegrift, and Detective Mentus. For the foregoing reasons, I would affirm the convictions.