COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


JOSEPH TYRONE EVANS, JR.

MEMORANDUM OPINION[*] BY
v.   Record No. 2216-98-3          JUDGE RICHARD S. BRAY
                                    NOVEMBER 2, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

Brian H. Turpin for appellant.

Richard B. Smith, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Joseph Tyrone Evans, Jr. (defendant) was convicted in a bench

trial for robbery.  On appeal, he challenges the sufficiency of

the evidence to prove the offense.  Finding no error, we affirm

the conviction.

The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

I.

In reviewing the sufficiency of the evidence, we must

consider the record "'in the light most favorable to the

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Commonwealth, giving it all reasonable inferences fairly deducible therefrom.  In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth . . . ."  Watkins v. Commonwealth, 26 Va. App. 335, 348, 404 S.E.2d 859, 866 (1998) (citation omitted).  The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 474, 476 (1989).  "When weighing the evidence, the fact finder is not required to accept entirely either the Commonwealth's or defendant's account of the facts," but "may reject that which it finds implausible, [and] accept other parts which it finds to be believable."  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).  The judgment of the trial court will not be set aside unless plainly wrong or unsupported by the evidence. See Code § 8.01-680.

Viewed accordingly, the instant record establishes that, on the morning of December 20, 1997, defendant and Joe Leftwich agreed to "make a couple of [drug] sales."  Shortly thereafter, the victim, Teresa Hayes, "pulled up" in an automobile and asked if the two had "dope."  Leftwich responded, "yeah," and both entered Hayes' car, Leftwich in the front passenger seat and defendant in the rear.  Leftwich testified that defendant passed

-

him "something that looked like dope,"[1] which Leftwich exchanged with Hayes for $30.  However, after examining the item, Hayes declared that "she didn't want it . . . [because] it didn't look right," and Leftwich returned her money and took "the fake stuff back."

Leftwich recalled that Hayes and defendant then "got to arguin'" and defendant, armed with a gun, "was threatenin' [Hayes], . . . [c]allin' her bitches and . . . threatenin' to shoot her" if she did not "pay" the money to him.  Hayes began to "pull off slow," defendant reached into his coat pocket, Hayes reached for her pocketbook, and defendant "jumped outta' the car." With defendant outside the car and fearing that Hayes "was trying to shoot" him, Leftwich "pulled" a gun and shot her five times.

Mortally wounded, Hayes "pushed the gas to the floorboard," and the car "speeded up a little bit," striking a nearby tree and injuring Leftwich.  "[D]izzy," Leftwich dropped the gun to the floor, stumbled from the vehicle and directed defendant, standing approximately 20 feet distant, "to get the gun."  Defendant ran to the disabled car and returned with the gun, Hayes' pocketbook and her $30 cash.  Retaining possession of the pocketbook and money, defendant passed the weapon to Leftwich, and both fled.

At approximately 11:30 a.m. on the day of the offense, Quimmah Rasheed, a Commonwealth witness residing in close

_____

[1] Leftwich acknowledged that the "dope" was "fake."

-

proximity to the scene, heard "'bout five shots fired," a car "skid[]" and crash and, moments later, observed two men "runnin' down the street." One, resembling defendant, was carrying a "purse," followed by another, "stumblin'" along with "something in his hand."

Leftwich's niece, Ashley Poole, testified that defendant and Leftwich arrived at her apartment at "around lunchtime," dressed in "[b]loody clothes." Poole noticed that Leftwich "was carryin' a gun and [defendant] . . . a pocketbook." Leftwich confessed to Poole that "he did something very bad[,] . . . he killed a girl." Poole watched as defendant "look[ed] through the pocketbook" and discovered "some credit cards," which he "showed" to Leftwich. The two then "put clothes over their bloody clothes," left the apartment and "ran down [the] street." While in Poole's residence, defendant was observed in possession of the $30 stolen from Hayes.

Commonwealth witness Derrick Lea, a jail inmate previously housed in a cellblock with defendant, recounted a conversation in which defendant confessed that he and Leftwich "had robbed this lady[,] . . . took this pocketbook," and he had directed "Leftwich to shoot the MF." Sharetta Fitzgerald, the mother of defendant's son, testified that defendant also admitted to her that he "got . . . money from [the victim]" after "the other person shot" her.

At the conclusion of both the Commonwealth's case-in-chief and trial, defendant moved to strike the evidence, arguing that

-

the Commonwealth had failed to establish his intent to rob Hayes coincided with violence or intimidation, an element indispensable to robbery. The court overruled the motions and convicted defendant of the offense. On appeal, defendant again challenges the sufficiency of the evidence, contending that he "clearly did not have robbery in mind" during the encounter with Hayes, but, "instead[,] . . . petit larceny after the shooting."

## II.

"Robbery at common law is defined as, 'the taking, with the intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" Clay v. Commonwealth, 30 Va. App. 254, 258-59, 516 S.E.2d 684, 686 (1999) (en banc) (citation omitted). Thus,

> [t]he principal elements of robbery, . . . are the taking, the intent to steal, and the violence (or intimidation). Definitionally, there is a temporal correlation among these elements. The violence must occur before or at the time of the taking. The intent to steal and the taking must coexist. And the offense is not robbery unless the animus furandi was conceived before or at the time the violence was committed.

Branch v. Commonwealth, 225 Va. 91, 94-95, 300 S.E.2d 758, 759 (1983). It is, therefore, immaterial that the theft may have occurred after the victim's injury or death, provided the requisite intent to steal accompanied the related violence or intimidation, together with the other elements of the offense.

-

See <u>Whitney v. Commonwealth</u>, 223 Va. 66, 73, 286 S.E.2d 162, 166 (1982).

Here, defendant "was threatenin' [Hayes], . . . [c]alling her bitches, . . . threatenin' to shoot her" if she refused to surrender to him the $30 cash originally exchanged during the aborted drug transaction, finally instructing Leftwich "to shoot the MF" and immediately stealing her purse and money. Defendant later confessed to the robbery and attendant murder of Hayes to both Lea and Fitzgerald. Such evidence clearly supports the finding that defendant intended to steal Hayes' property through intimidation and violence and commanded another to murder her in furtherance of his criminal design, conduct clearly sufficient to constitute robbery.

Accordingly, we affirm the conviction.

<u>Affirmed.</u>

-