COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


MAURICE DAQUON MOORE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1006-11-1                      JUDGE LARRY G. ELDER
                                                    JULY 3, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

Adam M. Carroll (Riddick Babineau, P.C., on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General; Office of the
Attorney General, on brief), for appellee.


Maurice Daquon Moore (appellant) appeals from his bench trial conviction for malicious

wounding in violation of Code § 18.2-51 and his related convictions for using a firearm in the

commission of a malicious wounding in violation of Code § 18.2-53.1 and "shoot[ing],

stab[bing], cut[ting] or wound[ing]" in the commission of a felony in violation of Code

§ 18.2-53.[1]  On appeal, appellant contends the evidence was insufficient to prove he had the

requisite intent to maim, disfigure, disable or kill the victim.  We hold the evidence, viewed in

the light most favorable to the Commonwealth, supports the trial court's finding that appellant

acted with the requisite intent.  Thus, we affirm the challenged convictions.

Appellant contends that despite his possession of a "deadly weapon," the evidence was

insufficient to prove the "discharge" of the firearm while it was in his pocket was a malicious

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was convicted of two additional crimes arising out of the same events, but
those convictions are not at issue in this appeal.

and intentional act and that the trial court erred in considering appellant's actions after the accidental discharge as evidence of intent. He relies in part on the principle that where the facts are susceptible to two interpretations, one of which is consistent with innocence, the fact finder cannot arbitrarily adopt the interpretation which incriminates the accused. See, e.g., Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969). We disagree with appellant's contention that this principle requires a different result on the facts of this case.

Code § 18.2-51 provides in relevant part that "[i]f any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony." Malice may be either express or implied by conduct. Coleman v. Commonwealth, 184 Va. 197, 201, 35 S.E.2d 96, 97 (1945). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992). "[T]he defendant must be shown to have wilfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm." Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984). Malice may be inferred "from the deliberate use of a deadly weapon." Perricllia v. Commonwealth, 229 Va. 85, 91, 326 S.E.2d 679, 683 (1985). Whether malice existed is a question for the fact finder. Essex, 228 Va. at 280, 322 S.E.2d at 220.

"When a criminal offense consists of an act and a particular [intent], both the act and [intent] are independent and necessary elements of the crime that the Commonwealth must prove beyond a reasonable doubt." Hunter v. Commonwealth, 15 Va. App. 717, 721, 427 S.E.2d 197, 200 (1993) (en banc). It is a basic tenet of criminal law that the mens rea, or intent, and the actus reus, or criminal act, must concur. Clay v. Commonwealth, 30 Va. App. 254, 261, 516 S.E.2d

684, 687 (1999) (en banc).  However, "'concurrence in *time . . .* is neither required nor sufficient; the true meaning of the requirement that the mental fault concur with the act or omission is that the former *actuates* the latter.'"  Id. (emphases added) (quoting Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 8.11, at 267-68 (2d ed. 1986)).  Thus, the necessary concurrence of state of mind and conduct exists "when the defendant's mental state *actuates* the physical conduct." [2]  1 Wayne R. LaFave, Substantive Criminal Law § 6.3(a), at 451 (2d ed. 2003) [hereinafter 1 LaFave].

Proving intent by direct evidence is often impossible.  E.g., Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  Like any other element of a crime, intent may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it.  E.g., Rice v. Commonwealth, 16 Va. App. 370, 372, 429 S.E.2d 879, 880 (1993).  Circumstantial evidence of intent may include a person's statements and conduct, including "statements and conduct of an accused *after* the events that constitute the charged crime."  Simon v. Commonwealth, 58 Va. App. 194, 206, 708 S.E.2d 245, 251 (2011) (emphasis added).  Finally, "[a] person's conduct may be measured by its natural and probable consequences.  The finder of fact may infer that [he] intends the natural and probable consequences of his acts."  Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4 (1991) (en banc).

On appeal, we view the evidence and all inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the party prevailing below.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  It is within the province of the fact finder to

---

[2] This "actuation" language "must be narrowly read . . . to mean that the acts must be done for the actual carrying out of the intent and not merely to prepare for its execution."  1 LaFave, supra, § 6.3(a), at 454.  For example, if "A forms an intent to kill B," and A, while "driving to the store to purchase a gun with which to kill B," "accidentally runs over B and kills him," "there is no concurrence of the mental and physical elements."  Id.

evaluate the credibility of the witnesses. E.g., Elliott v. Commonwealth, 277 Va. 457, 462-63, 675 S.E.2d 178, 181-82 (2009). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

The trial court expressly found that the "pocket discharge" which wounded unintended victim Brock Pettaway, Jr., was "negligent[] or accidental[]." However, the court also found appellant had the requisite intent to "maim, disfigure or kill" co-defendant Wells' intended victim, Davon "Duke" Jennings, when appellant began the process of withdrawing the gun from his pocket, the action which caused the "negligent[] or accidental[]" shooting. It thus concluded appellant's intent to harm Jennings supported his conviction for the malicious wounding of the unintended victim Pettaway.

The direct and circumstantial evidence, viewed in the light most favorable to the Commonwealth, readily supports the trial court's finding that appellant acted with malice toward Jennings, co-defendant Wells' intended victim. Appellant knew Wells was driving from Portsmouth to Suffolk to fight Jennings, whom Wells believed had robbed his uncle. Appellant asked to come along and brought a gun with him. Appellant, Wells, and their two companions made plans as they drove. When they located Jennings and he refused to raise his fists to fight, Wells said, "If we can't jump him[,] we'll shoot him." At that time, appellant, who stood nearby, had his hand in his pants pocket on his gun, which immediately discharged. Immediately after that firing, which grazed the leg of bystander Pettaway, appellant pointed the gun at Jennings and chased him down the street while firing five or six more shots.

These facts support a finding that appellant had the malicious intent to maim, disfigure, disable or kill the intended victim, Jennings, and the trial court convicted him of attempting to

commit that offense.[3]  Manifestly, had appellant accidentally hit *Jennings* when he inadvertently discharged the weapon while trying to remove it from his pocket for the intended purpose of maliciously wounding *Jennings*, this wounding would have proved a completed rather than attempted malicious wounding.  Although this was not the specific method by which appellant intended to wound Jennings, appellant's malicious mental state actuated his physical conduct. See Clay, 30 Va. App. at 261, 516 S.E.2d at 687; 1 LaFave, supra, § 6.3(a), at 451.  The discharge of the weapon while still in appellant's pocket, although found by the trial court to have been accidental, was an immediate, natural and probable consequence of that actuation.

Further, given that appellant engaged in this behavior at a crowded high school bus stop where the intended victim stood with numerous others, appellant's hitting someone *other than Jennings* was also a natural and probable consequence of his acts.  See Essex, 228 Va. at 280, 322 S.E.2d at 220.

Our holding in Blow v. Commonwealth, 52 Va. App. 533, 665 S.E.2d 254 (2008), supports this result.  Blow involved a defendant who stabbed his wife numerous times while their young daughter was present.  Id. at 535, 665 S.E.2d at 255.  While the defendant was doing so, his daughter "'jumped on his back'" and "'tried to grab the knife,'" which resulted in the defendant's "cut[ting] his daughter's hand with the knife."  Id.

In holding Blow was criminally responsible for maliciously wounding his daughter, we reasoned as follows:

> The evidence shows that Blow created the situation that caused his daughter's injury through his intentional acts:  he attacked his wife and stabbed her numerous times with a kitchen knife, while his daughter was present.  In this context, it was certainly reasonably foreseeable that his daughter would come to

---

[3] The portion of appellant's petition for appeal challenging his conviction for the attempted malicious wounding of Jennings and a related conviction for using a firearm in the commission of that offense was denied.

> her mother's aid.  When his daughter was injured during Blow's
> on-going attack, that injury was "within the *res gestae* of" his
> original criminal act.  Davis v. Commonwealth, 12 Va. App. 408,
> 410-11, 404 S.E.2d 377, 378-79 (1991) (discussing the related
> concept of the felony murder rule).  Because his daughter's injury
> was reasonably related to the criminal act Blow directed at his
> wife, and because Blow had the requisite intent to maim his wife
> when he cut his daughter, the doctrine of transferred intent applies.
> "It is fairly clear that when the defendant intends [a criminal act]
> his intention will be 'transferred' to make him liable for [the
> unintended crime], *provided that the harm is direct and immediate,
> i.e. within the scope of the [intended crime]*."

Id. at 542-43, 665 S.E.2d at 258-59 (emphasis added) (footnote omitted) (quoting William L.

Prosser, Transferred Intent, 45 Tex. L. Rev. 650, 655 (1966-1967)).  Because the daughter's

injury "was a natural and probable consequence of [the defendant's] crime," the doctrine of

transferred intent supported his conviction for maliciously wounding her.  Id. at 544, 665 S.E.2d

at 259.

Similarly here, it was "reasonably foreseeable" that appellant's bringing a firearm to the

scene of the fight and struggling to remove it from his pocket in the midst of the crowd at the bus

stop in order to attempt to maliciously wound Jennings might cause injury to another, and the

injury appellant inflicted on Pettaway was "direct and immediate, i.e., within the scope of the

[intended crime]," see id. at 543-44, 665 S.E.2d at 258-59.  Although cases of transferred intent

are often referred to as involving "bad aim" resulting in the striking of an unintended victim, see

generally 1 LaFave, supra, § 6.4(d), at 473, we hold the result should be no different where a

defendant, undertaking to aim, exercises such poor control over his weapon that he injures an

innocent bystander when he accidentally discharges it without first taking any aim at all.

Thus, the evidence supports the trial court's finding that when appellant was "beginning

that process of withdrawing the firearm . . . from his pocket . . . [to] fire at others in the crowd,"

the "intent [he had] at that moment to maim, disfigure or kill" Jennings also supported his

conviction for the malicious wounding of Pettaway and the two related offenses.  See Riddick v.

Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983) (discussing the doctrine of transferred intent, which provides that "if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even though such death is accidental or unintentional"); People v. Frazier, 369 N.E.2d 398, 401-02 (Ill. App. Ct. 1977) (stating the doctrine of transferred intent renders one criminally responsible "'where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensue[s] as a natural and probable consequence,'" and holding the defendant, who "knowingly and intentionally struck [his intended victim] in the face with a gun which discharged and wounded [an innocent bystander on a nearby barstool]," was "responsible for the resulting discharge of the weapon *whether or not it was accidental*" and, thus, was guilty of aggravated battery of the bystander (emphasis added) (quoting People v. Hickman, 291 N.E.2d 523, 527 (Ill. App. Ct. 1973) (citing 21 Am. Jur. 2d Criminal Law § 83, at 84))).

For these reasons, we hold the evidence proved malice, and we affirm the challenged convictions.

Affirmed.