UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia


MARQUEZ RAH-SHAUN PERKINS

MEMORANDUM OPINION[*] BY
v.      Record No. 1040-15-1      JUDGE TERESA M. CHAFIN
JANUARY 17, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Charles E. Haden for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Following a bench trial, Marquez Rah-Shaun Perkins ("appellant") was convicted of

robbery, conspiracy to commit a felony, malicious wounding, and two counts of use of a firearm in

the commission of a felony.[1]  On appeal, appellant contends there was insufficient evidence to

support his convictions.  He also argues that the trial court erred in admitting hearsay statements of

an alleged co-conspirator.  For the reasons that follow, we affirm appellant's convictions for

robbery, conspiracy to commit a felony, and use of a firearm in the commission of a robbery.  We

reverse appellant's convictions for malicious wounding and use of a firearm in the commission of

malicious wounding.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of possession of a firearm by a convicted felon and credit
card theft.  These convictions were vacated by the trial court on its own motion and are not at
issue on appeal.

BACKGROUND

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence proved that on March 4, 2014, Otis White, Jr. visited Benita Perkins at her apartment. White had known Perkins for more than thirty-five years, but he had only known Perkins's son, appellant, for three to four months.

When White arrived at Perkins's apartment, he had "a little over five[-]thousand dollars" in his pants pocket because he had just received a back payment of his Social Security disability benefits. He also had on his person a wallet with his identification, his Social Security card, and a debit card he used to obtain cash from his monthly Social Security benefits payments.

At the time White arrived, Perkins was cooking and appellant was in a back room of the apartment. After speaking briefly with Perkins, White went to speak to appellant. White testified that appellant was with Justin Williams, the co-defendant in this case, and a young woman. When White commented on appellant's new dog, appellant asked White for twenty dollars so he could buy the dog a bowl. White agreed to give appellant the money and proceeded to reach in his pants pocket. He had "hundreds on the outside and fifties and twenties on the inside and it was folded like a wallet." He tried to reach into his pocket "just to pull a twenty out because [he] didn't want everybody to see how much money [he] had." As he was pulling out the twenty-dollar bill, "some of [the other bills] came over [the] top of [his] pocket."

White noted that Williams appeared to see the cash in his pocket. Moments later, Williams left the room and was absent for five to ten minutes. Upon his return, Williams called appellant out of the room and the two went into the living room. White sat in the back room with the young woman for approximately five minutes before leaving the room to find Perkins.

White observed appellant and Williams talking in the living room. They stopped speaking as White walked by and continued talking after he passed them.

In the kitchen, White informed Perkins that he had given appellant twenty dollars to purchase a dog bowl. Perkins complained that White had not bought her anything, and White suggested they go to a nearby 7-Eleven where he could buy her some snacks. White indicated that before they left the apartment, he transferred the cash from his pants pocket to his jacket pocket.

Upon leaving, White and Perkins walked through the apartment building parking lot. As they reached the end of the parking lot, White "felt somebody walking behind" him. White turned around and saw appellant "holding a pistol up in the air like he was about to hit" him. White smiled at appellant, and appellant smiled back at White. White testified that he did not think appellant would do anything in his mother's presence. White turned around and took a few more steps. Within moments of turning around, Williams struck White on the right side of his face. At the same time, White was struck in the back of his head by what he believed was the pistol held by appellant. White described the item as a black handgun. White testified that it was not yet dark outside at the time of the assault and that there were only four people in the parking lot – himself, Perkins, appellant, and Williams.

White lost consciousness. When he regained consciousness approximately ten minutes later, he discovered that he was alone in the parking lot and his cash and wallet were gone. White's eye was swollen shut, his left ear was bleeding, and his lips were swollen. White walked to the 7-Eleven and asked the cashier to call for help. White was treated for his injuries at a hospital.

White subsequently spoke with Detective Robert Jones and identified appellant and Williams as his assailants from photographs. Jones interviewed Williams on April 24, 2014.

During the interview, Williams admitted that he and appellant were pictured in the photographs White had reviewed and used to identify the suspects. He also admitted that the large amount of cash appearing in the photographs was in fact the cash he and appellant had acquired during the robbery of White. Williams also indicated that he saw appellant with a black handgun. Williams told Jones that appellant set up the robbery and that he received one hundred dollars for his role in the crime. At trial, Jones testified to Williams's statements over objection from appellant. Appellant argued that Williams's statements constituted hearsay and violated appellant's right to confrontation. The trial court overruled the objection and allowed the testimony.

ANALYSIS

I. Sufficiency of the Evidence

Appellant was convicted of robbery, conspiracy, malicious wounding, and two counts of use of a firearm during the commission of a felony. On appeal, he contends that the trial court erred by denying his motion to strike the evidence because

> the Commonwealth's evidence was insufficient to prove beyond a reasonable doubt that [he] actually used a firearm to commit a robbery and maiming, that he actually committed or participated in a robbery or maiming, that he actually conspired with another to commit a robbery, or, with regard to the maiming, that he intended to maim, disfigure or kill Otis White, Jr.

As previously stated, on appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner, 268 Va. at 303, 601 S.E.2d at 558. Viewing "the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth . . . .'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

- 4 -

The evidence supporting a conviction "must exclude every reasonable hypothesis of innocence . . . ." Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997) (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)). Whether an "alternative hypothesis of innocence is reasonable, [however], is a question of fact" that will be reversed on appeal only if plainly wrong. Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (quoting Archer, 26 Va. App. at 12, 492 S.E.2d at 832). "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence [remains] a matter for the [fact finder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964); see Marable v. Commonwealth, 27 Va. App. 505, 510, 500 S.E.2d 233, 235 (1998). The appellate court asks only whether a reasonable fact finder could have rejected the defense's theories and found the defendant guilty beyond a reasonable doubt. See Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). "If the evidence is sufficient to support the conviction," the reviewing court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]." Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

### A. *Robbery and Conspiracy to Commit Robbery*

Appellant was convicted of robbery and conspiracy to commit robbery. On appeal, appellant maintains that "there was reason to view [White's] ostensible identification of [appellant] with skepticism" because of the lack of forensic evidence or any confession by appellant. Appellant further contends that White's testimony and the statements Williams made to Detective Jones about his part in "setting up the robbery" were insufficient to prove he conspired with Williams to rob White.

Code § 18.2-58 defines the punishment for robbery, but it does not set forth the elements of the offense. Therefore, we must look to the common law definition of the offense to determine its elements. At common law, robbery "is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" Ali v. Commonwealth, 280 Va. 665, 668, 701 S.E.2d 64, 66 (2010) (quoting Durham v. Commonwealth, 214 Va. 166, 168, 198 S.E.2d 603, 605 (1973)).

Conspiracy is set forth in Code § 18.2-22(a) which states, in relevant part,

> [i]f any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, or if he shall so conspire, confederate or combine with another within this Commonwealth to commit a felony either within or without this Commonwealth, he shall be guilty of a felony . . . .

"Conspiracy is defined as an agreement between two or more persons by some concerted action to commit an offense." Combs v. Commonwealth, 30 Va. App. 778, 787, 520 S.E.2d 388, 392 (1999) (quoting Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993)). "Because most conspiracies are 'clandestine in nature,' by 'the very nature of the offense, it often may be established only by indirect and circumstantial evidence.'" James v. Commonwealth, 53 Va. App. 671, 678, 674 S.E.2d 571, 575 (2009) (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 12.2(a), at 266 (2d ed. 2003); Wright v. Commonwealth, 224 Va. 502, 506, 297 S.E.2d 711, 713 (1982)). Thus, "[p]roof of an explicit agreement is not required." Combs, 30 Va. App. at 787, 520 S.E.2d at 392. Rather, "conspiracy may be inferred from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." Id. at 787, 520 S.E.2d at 392-93 (quoting McQuinn v. Commonwealth, 19 Va. App. 418, 425, 451 S.E.2d 704, 708 (1994)).

Determining the credibility of the witnesses and the weight afforded their testimony are matters left to the fact finder, who has the ability to hear and see them as they testify. E.g., Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989). Here, the trial court, after hearing all the evidence, accepted White's version of events. The trial court commented that White's testimony was "extremely compelling and credible" and that White "didn't seem . . . that he had an axe to grind."

White testified that he had over $5,000 in his pocket and that Williams appeared to see the cash. White described the meeting between appellant and Williams before he and Perkins left the apartment. White noted that appellant and Williams ceased talking as he walked by them. As White and Perkins were walking to a nearby convenience store, White sensed that someone was following him. When he turned around, he saw appellant holding a gun. White turned around and continued walking, confident that appellant would not hurt him in front of Perkins. However, five to ten seconds later, Williams struck him with his fist from White's right side. White was then struck in the back of his head with something that "was not a fist." After White regained consciousness, he discovered that his wallet and money were missing. It was still daylight outside, and at the time of the incident, White testified that the only four people standing in the parking lot were himself, Perkins, appellant, and Williams.

Photographs taken the day after the incident depict appellant and Williams with large amounts of cash. White identified appellant and Williams in the photos and indicated the denominations of money in the photos matched the currency he had been carrying the day of the incident. White's testimony along with the other evidence was sufficient to prove that appellant and Williams conspired to rob and, in fact, did rob White.

*B. Use of a Firearm in the Commission of a Robbery*

Appellant argues there was insufficient evidence to support his conviction for use of a firearm in the robbery of White.

Appellant was found guilty of violating Code § 18.2-53.1 which provides in pertinent part that "[i]t shall be unlawful for any person to use or attempt to use any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery." As the Supreme Court has explained, "Code § 18.2-53.1 has dual objectives." Startin v. Commonwealth, 281 Va. 374, 379, 706 S.E.2d 873, 877 (2011) (citing Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980)). Not only does "the statute criminalize[] the use or display of an actual firearm that has the capability of expelling a projectile by explosion," but it "also has the additional purpose of preventing fear of physical harm by the use or threatening display of an instrumentality that has the appearance of having the capability of an actual firearm." Id. Thus, a "firearm" under Code § 18.2-53.1 "includes those items which, although lacking the physical capability of firing a projectile by explosion, have the appearance of having the capability to do so." Id. at 380, 706 S.E.2d at 877; see also Holloman, 221 Va. at 199, 269 S.E.2d at 358 (noting that a "firearm" for purposes of Code § 18.2-53.1 includes "an instrument which [gives] the appearance of having a firing capability, whether or not the object actually ha[s] the capacity to propel a bullet by the force of gunpowder").

White testified that he saw Perkins holding a gun "up in the air like he was about to hit [him]." He then was hit from the right and, at the same time, was struck in the back of the head with what he believed was the gun he just observed appellant holding. The trial court had the opportunity to see and hear White testify and determined that his testimony was "extremely compelling and credible." Determining the witness' credibility was within the trial court's purview as the fact finder. See Taylor, 256 Va. at 518, 506 S.E.2d at 314. Consequently, we

hold that the trial court did not err in finding that appellant used a firearm in the commission of a robbery.

### C. Malicious Wounding and Use of a Firearm in the Commission of Malicious Wounding

Appellant argues that the evidence failed to prove he acted with the requisite intent to be found guilty of malicious wounding. Appellant also contends that the evidence is insufficient to find him guilty of using a firearm in the commission of that offense.

"When a criminal offense consists of an act and a particular [intent], both the act and [intent] are independent and necessary elements of the crime that the Commonwealth must prove beyond a reasonable doubt." Hunter v. Commonwealth, 15 Va. App. 717, 721, 427 S.E.2d 197, 200 (1993) (*en banc*). In other words, it is a basic tenet of criminal law that the *mens rea*, or intent, and the *actus reus*, or criminal act, must concur. Clay v. Commonwealth, 30 Va. App. 254, 261, 516 S.E.2d 684, 687 (1999).

Code § 18.2-51 states:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Burkeen v. Commonwealth, 286 Va. 255, 259, 749 S.E.2d 172, 174 (2013) (alteration in original) (footnote omitted) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947)). "Intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it." Banovitch v. Commonwealth, 196 Va. 210, 216, 83

- 9 -

S.E.2d 369, 373 (1954) (citations omitted). Where "a person intentionally takes an action, the probable consequence of which is the permanent disability of another, even if permanent disability does not result, he or she can be found to have intended to cause a permanent disability." Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1, 4-5 (1991) (*en banc*).

To be found guilty pursuant to Code § 18.2-51, a person must intend to permanently harm another person. Id. at 484, 405 S.E.2d at 4.

> The word "disfigure" means a "permanent and not merely a temporary and inconsequential disfigurement." Lee v. Commonwealth, 135 Va. 572, 578, 115 S.E. 671, 673 (1923). Similarly, the word "disable" must refer to a permanent, not a temporary, disablement.

Id.

Here, as appellant argues, we hold the evidence was insufficient to prove beyond a reasonable doubt that he committed malicious wounding. The trial court found credible White's testimony that appellant struck White in the head with a gun. Although the force of this blow was sufficient to injure White, we cannot say that this record contains sufficient evidence from which the trial court could have inferred an intent to cause permanent disability. Because White was also struck by Williams and fell to the ground when he was rendered unconscious, an inference of malice on the part of appellant may not be drawn from the extent of White's injuries.

Accordingly, the evidence was insufficient to support a finding of malice and, consequently, insufficient to sustain the malicious wounding conviction. As the evidence was insufficient to support appellant's malicious wounding conviction, we also find the evidence insufficient to support his conviction for use of a firearm in the commission of that offense.

- 10 -

## II.  Admissibility of Hearsay and the Confrontation Clause

Appellant contends that the trial court erred by permitting Detective Jones to testify regarding Williams's statements.  Specifically, he contends that the statements were inadmissible hearsay and that their admission violated his right to confrontation.  Assuming without deciding that the challenged hearsay testimony was erroneously admitted, the error was clearly harmless beyond a reasonable doubt.

"When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt."  Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).  In making that determination, an appellate court must consider, among other factors, "the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case."  Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).  See also Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000); Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78 (2000), cert. denied, 532 U.S. 978 (2001).

As the Supreme Court stated in Van Arsdall, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  475 U.S. at 681.  See Jenkins v. Commonwealth, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992) (concluding that the admission of a defendant's confession was harmless error based on the Commonwealth's presentation of overwhelming evidence of guilt, which consisted of other confessions to close friends, fellow jail inmates, and investigators).  It is well established that violations of the Confrontation Clause are

- 11 -

subject to harmless error review. See Crawford v. Washington, 541 U.S. 36, 76 (2004) (Rehnquist, C.J., concurring in the judgment).

The record in this case establishes that any error in admitting Williams's hearsay statements was harmless beyond a reasonable doubt as to appellant's convictions. The trial court expressly credited White's testimony in convicting appellant, characterizing it as "extremely compelling and credible." The trial court did not suggest in any way that it relied on Williams's statements in convicting appellant. Williams's statements to Jones did not add anything of significance to White's account of the incident. Accordingly, we hold that even if the admission of the statements compromised appellant's right of confrontation, the error, in the circumstances of this case, was harmless beyond a reasonable doubt.

CONCLUSION

We hold that the evidence was sufficient to prove robbery, conspiracy to rob, and use of a firearm in the commission of a robbery. Accordingly, we affirm those convictions. In addition, we hold that any error the trial court committed in allowing the hearsay evidence was harmless beyond a reasonable doubt. We hold that the evidence was insufficient to prove malicious wounding and the use of a firearm to commit that offense. Therefore, we reverse those convictions. For these reasons, we affirm in part and reverse in part the trial court's decision.

Affirmed in part; reversed in part.