COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Bumgardner
Argued at Salem, Virginia

LILLIE ROSENBAUM COMBS, S/K/A
 LILLIE MARIE COMBS
                                            OPINION BY
v.     Record No. 1846-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         OCTOBER 26, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                    B. A. Davis, III, Judge Designate

              Jesse W. Meadows, III, for appellant.

              Virginia B. Theisen, Assistant Attorney
              General (Mark L. Earley, Attorney General,
              on brief), for appellee.


     Lillie Marie Combs (appellant) was convicted in a joint

bench trial with her husband, Nathan Allan Combs, of

solicitation of money or other thing of value in connection with

a placement or adoption, in violation of Code § 63.1-220.4, and

conspiracy to solicit money or other thing of value in

connection with a placement or adoption, in violation of Code

§§ 18.2-22 and 63.1-220.4.[1]  On appeal, she contends the evidence

was insufficient to convict her of the offenses charged.  For

the following reasons, we affirm.

_____

     [1] Appellant was originally indicted for two counts of
solicitation of money or other thing of value in connection with
a placement or adoption under Code § 63.1-220.4 and one count of
conspiracy.  However, after trial, at the sentencing hearing,
the trial court granted appellant's motion to set aside one of
the solicitation counts.

I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that it is plainly wrong or without evidence to support it.  See Stevens v. Commonwealth, 14 Va. App. 238, 240, 415 S.E.2d 881, 882-83 (1992).

The evidence established that appellant and Nathan Combs (Combs) married in January 1996.  Their daughter, A.C., was born October 23, 1996.  The family moved to a rented trailer in a mobile home park in April 1997.  By June 1997, appellant and her husband were experiencing severe financial difficulties.  Neither appellant nor Combs had a steady job, and their public assistance payments expired.  They sold a vehicle, furniture, and other items to pay for ordinary household necessities.

On June 13, 1997, appellant contacted Bill Devlin at Catholic Charities, an adoption agency in Roanoke.  Devlin met with appellant and Combs at their home on June 20, 1997 and discussed with the couple placing A.C. for adoption through the agency.  Appellant and Combs stated they were under a great deal

-

of emotional and financial stress.  Combs asked if the agency or the potential adoptive couple could "help out with their situation."  Devlin explained that any exchange of money or property in return for the child would be a violation of the law.  Devlin agreed to return in a few days with the necessary legal documents and to take custody of A.C.

Devlin returned to appellant's home as agreed on June 23, 1997, but found no one at the trailer.  Devlin saw appellant later that day, and she advised him that her mother was going to keep the child.  Subsequently, appellant called Devlin and said she wanted to proceed with the adoption.  However, Devlin never heard from appellant again.

Debbie Farthing (Farthing) testified that in July 1997, one month after appellant's initial meeting with Devlin, she met with appellant and Combs at their trailer.  Farthing did not know appellant or Combs but understood that they were to be evicted from the trailer and that they wanted someone to take their baby.  During the meeting, appellant sat and held the baby in the same room with Farthing and Combs.  Combs said they wanted someone to take the baby, wanted $1,500 to buy a truck and wanted to leave town.  Appellant offered no objection. Combs said an adoption agency "was wanting to take the baby" but that he "wasn't going to do it" because they were going to "make thousands of dollars off the baby."  Combs said he was not going to "give the baby away free."  Farthing took A.C. with her after

-

the meeting but returned the baby to appellant and Combs the same day because Farthing's husband refused to cooperate with the plan.

Thelma Farrar (Mrs. Farrar) was the owner of the mobile home park where the Combs lived. She visited appellant's trailer in late June or early July. At that time, appellant was in the living room holding her baby. Combs told Mrs. Farrar that he would give her the baby in exchange for $1,000. Appellant again offered no objection. Combs also commented, "I wouldn't be selling her, there's not enough money in the world to buy my baby."

Combs worked periodically for Bobby Farrar (Mr. Farrar) in a security business. While working on July 19, 1997, Combs asked Mr. Farrar if he and his wife had decided whether they wanted A.C. Combs said he now wanted $2,000 for the child. Combs indicated he wanted to use the money to catch up on his rent and buy a cheap car.

On July 23, 1997, Mrs. Farrar confronted Combs outside the trailer about his overdue rent payments. Combs asked Mrs. Farrar to "give [him] a little money" and accept A.C. for the rent he owed. Mrs. Farrar refused the offer.

Mrs. Farrar saw Combs outside his trailer two days later. Combs said: "[T]hese nice people in the trailer are from Texas and they're going to take [A.C.]. I just want to see if you want her, because I would rather you have her than these

-

people." Combs told Farrar the Texas couple was going to give them $3,000 for the baby. Mrs. Farrar responded that she did not have that kind of money. Appellant left the trailer and asked Mrs. Farrar to call Molly, Combs's mother, and ask her to bring A.C.'s birth certificate. Mrs. Farrar saw the Texas couple put A.C.'s things in their car. The evidence also established that the Singletons, a couple from Texas, took A.C. from appellant's home to Texas within twenty-four hours of their having met Combs and appellant. However, the child was subsequently returned to Virginia and placed in the custody of Combs's mother.

Appellant testified that she and her husband pursued an adoption for A.C. because of their financial situation but that they did not attempt to receive money in return. The trial judge accepted the Commonwealth's evidence and rejected appellant's testimony. Accordingly, appellant was convicted of solicitation of money or other thing of value in connection with a placement or adoption, in violation of Code § 63.1-220.4, and conspiracy to solicit money or other thing of value in connection with a placement or adoption, in violation of Code §§ 18.2-22 and 63.1-220.4.

## II. SOLICITATION OF MONEY

Code § 63.1-220.4, the statute under which appellant was convicted, prohibits, inter alia, the solicitation of money or

-

any thing of value in connection with the placement or adoption of a child.  Under Code § 63.1-220.4,

> [n]o person or child-placing agency shall charge, pay, give, or agree to give or accept any money, property, service or other thing of value in connection with a placement or adoption or any act undertaken pursuant to this chapter . . . .  No person shall advertise or solicit to perform any activity prohibited by this section.  Any person violating the provisions of this section shall be guilty of a Class 6 felony.

(Emphasis added).

In the instant case, appellant contends the evidence was insufficient to establish either that she violated the statute or that she "counseled, enticed or induced" another to violate Code § 63.1-220.4.  Specifically, she argues that "[t]here is absolutely no evidence whatsoever to prove beyond a reasonable doubt that [she] committed criminal solicitation."  However, appellant was not charged with criminal solicitation, in violation of Code § 18.2-29,[2] which requires the Commonwealth to prove that the defendant intended to induce another to commit a crime.  See Ford v. Commonwealth, 10 Va. App. 224, 227, 391

---

[2] Code § 18.2-29 provides:

> Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony, shall be guilty of a Class 6 felony.  Any person age eighteen or older who commands, entreats, or otherwise attempts to persuade another person under age eighteen to commit a felony, shall be guilty of a Class 5 felony.

-

S.E.2d 603, 604 (1990).  To the contrary, appellant was charged

with violating Code § 63.1-220.4 by soliciting payment of money

or other thing of value with the placement of A.C.[3]

"Generally, the words and phrases used in a statute should

be given their ordinary and usually accepted meaning unless a

different intention is fairly manifest."  Woolfolk v.

Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).

The commonly accepted definitions for the word "solicit"

include:  "to make petition to," "entreat, importune," "to

approach with a request or plea (as in selling or begging)."

Webster's Third New International Dictionary 2169 (1993).  Code

§ 63.1-220.4 contains a clear prohibition against the request or

plea for payment of money or any other thing of value in

connection with an adoption or the placement of a child.

In the instant case, the Commonwealth's evidence proved

that Combs, in appellant's presence, attempted to obtain money

from Farthing, Mrs. Farrar, and the Singletons in exchange for

---

[3] The amended indictment charged appellant with the
following:

> On or about July 18, 1997, through July 25,
> 1997, in the County of Pittsylvania,
> Virginia, Lillie Rosenbaum Combs did
> unlawfully and feloniously, in connection
> with the placement or adoption of A.M.C.,
> born October 23, 1996, solicit payment of
> money or other thing of value not
> specifically allowed by Code
> Section 63.1-220.4, Code of Virginia.

-

placing their child, A.C., for adoption.  Combs commented that he was not going to give A.C. away for free because he could make thousands of dollars for the child.  Appellant did not object to Combs's comment or to his offers to sell the child.  Additionally, it was appellant who first contacted Devlin, only to learn that an adoption through the agency would not result in the payment of any money to her and her husband.  In fact, when Devlin saw appellant a few days later, she falsely told him that she had made arrangements for A.C. to stay with a grandmother.  Finally, while the Singletons were present at the trailer, appellant tried to obtain the child's birth certificate to facilitate the adoption.

The trial judge accepted the Commonwealth's evidence and rejected appellant's testimony that she did not attempt to receive money in return for the placement or adoption of A.C.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Considering the totality of facts and attendant circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of violating Code § 63.1-220.4 by soliciting the payment of money in connection with the placement of her child.

### III. CONSPIRACY

Additionally, appellant was convicted of conspiring to violate Code § 63.1-220.4. On appeal, she contends the evidence was insufficient to prove a conspiracy because the Commonwealth failed to prove that appellant and Combs agreed to unlawfully solicit payment of money or other thing of value in connection with the placement of A.C. We disagree.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). Proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. See Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992). "[A] conspiracy may be inferred from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." McQuinn v. Commonwealth, 19 Va. App. 418, 425, 451 S.E.2d 704,

-

708 (1994) (internal quotations and citations omitted), aff'd en banc, 20 Va. App. 753, 460 S.E.2d 624 (1995).

> Where . . . it has been shown that the defendants "by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object."

Brown v. Commonwealth, 10 Va. App. 73, 78, 390 S.E.2d 386, 388 (1990) (citations omitted).

The fact that the perpetrators of a crime are husband and wife does not, without more, create an inference that they conspired to commit the offense charged. See Jones v. Commonwealth, 11 Va. App. 75, 82, 396 S.E.2d 844, 848 (1990). A conspiracy, even one between husband and wife, requires a showing of an agreement between the conspirators. See, e.g., Stumpf v. Commonwealth, 8 Va. App. 200, 206, 379 S.E.2d 480, 484 (1989); Henry v. Commonwealth, 2 Va. App. 194, 197, 342 S.E.2d 655, 656 (1986).

The evidence demonstrated a concerted plan of action by appellant and her husband from June 13 to July 25, 1997, to place their child in return for a financial payment. Appellant first contacted an adoption agency about the matter. However, Devlin advised appellant and Combs that they would receive no remuneration in the arrangement, and they withdrew their request. While appellant held the child in the same room, Combs

-

subsequently negotiated with Farthing to exchange the baby for $1,500 and offered the baby to Farrar for $1,000.  Appellant, the child's mother, raised no objection and did not intervene. Combs admitted on July 25, 1997 that they had agreed to give the baby to the Singletons for $3,000.[4]  While the Singletons were present at the trailer, appellant tried to have A.C.'s birth certificate delivered.

Where two or more people act to pursue the same object, such as appellant and Combs, "one performing one part and the other performing another part so as to complete it or with a view to its attainment, [the fact finder] will be justified in concluding that they were engaged in a conspiracy to effect that object."  Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)). Considering all of the attendant circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant and her husband conspired to solicit money in connection with an adoption and, in fact, did so.

---

[4] We need not address appellant's argument that Combs's statements may not be attributed to her as a co-conspirator. Appellant did not object to the statements as being inadmissible at the time they were offered into evidence, and her claim is barred on appeal.  See Rule 5A:18; Marlowe v Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) ("To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made.").

-

For the foregoing reasons, appellant's convictions are affirmed.

<u>Affirmed</u>.
