COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Huff
Argued at Chesapeake, Virginia


NAHFIS TALIB ASSEM NICHOLS

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0499-12-1                    JUDGE LARRY G. ELDER
                                                  DECEMBER 18, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

William Roots, Jr. (Law Office of William Roots, Jr., on brief), for
appellant.

John W. Blanton, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Nahfis Talib Assem Nichols (appellant) challenges the sufficiency of the evidence

supporting his conviction for conspiracy to commit first-degree murder.[1]  He contends the evidence

does not support a finding that he entered into an agreement to kill the victim.  Because the evidence

does not exclude the reasonable hypothesis that appellant merely aided and abetted the commission

of the murder, the Commonwealth's evidence does not prove beyond a reasonable doubt that

appellant entered into an agreement to murder the victim.  We accordingly reverse appellant's

conviction and dismiss the indictment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not challenge his convictions for murder or use of a firearm during the commission of a felony.

## BACKGROUND

On the night of December 11, 2009, the victim, Jerome Houston (the victim), was socializing with Donte Houston (Houston), Chinasty Duck, and Naijae Pender near an apartment complex. At approximately midnight, the youths began to leave and encountered another group of individuals consisting of appellant, Arnez Boyd, and Andre Narwood. When Boyd saw the victim, he said, "What's up" and immediately shot him using a firearm concealed in his sleeve. Appellant likewise shot the victim with his own firearm after retrieving it from Narwood. The victim was taken to the hospital where he died from his injuries.

Narwood testified that on the night of the shooting, he, Boyd, and appellant arrived at the apartment complex to attend a party. Narwood understood that Boyd was angry with the victim because he was set to testify against Boyd's cousin in an unrelated matter. The three individuals had been with each other the entire day, but Narwood could not recall any conversation amongst the three of them to kill the victim. On the way to the party, however, Boyd stated he was "going to pop that nigger," referring to the victim. Narwood testified that he had possession of appellant's firearm when the group encountered the victim and his friends. When Boyd began firing at the victim, appellant took the firearm from Narwood's waistband and joined in shooting the victim.

Houston, the victim's cousin, confirmed Narwood's account of the circumstances leading up to the shooting. Houston testified that neither he nor the victim had plans to meet up with Boyd, appellant or Narwood. Houston was unaware of any dispute between Boyd and the victim at the time of the shooting.

Duck lived in the apartment complex at the scene of the shooting. She testified that she was walking home when she encountered Narwood, appellant, and Boyd. She observed a firearm in Boyd's hand and saw appellant was covering the lower portion of his face with his sleeve.

According to Duck, Boyd told her "that he weren't [sic] going to do nothing to [Duck]," a statement which Narwood repeated. Duck knew of the dispute between Boyd and the victim. Duck further testified that appellant, Boyd, and Narwood were affiliated with the same street gang.

At the conclusion of the Commonwealth's evidence, appellant moved to strike the conspiracy indictment, which the trial court denied. Although the court agreed that "there was not conspiracy at the home," it held the fact that appellant reached into Narwood's waistband to retrieve his firearm and shoot the victim indicated that appellant "joined" in the shooting.

Boyd testified on appellant's behalf. He confirmed that he pled guilty to the murder of the victim. However, Boyd refused to explain why he killed the victim.

At the conclusion of all the evidence, the trial court found appellant guilty of murder, use of a firearm during the commission of a felony, and conspiracy to commit first-degree murder. In regards to the conspiracy conviction, the trial court found Boyd's testimony "totally unreliable." The trial court held "[appellant and Boyd] did not at home agree to commit a murder. What they did do, though, is when, one, Boyd, Arnez Boyd started firing, the Court believes that a decision was made by [appellant] to join in that venture." The trial court held that this act of joining in the shooting at that moment created the agreement to murder the victim and therefore proved beyond a reasonable doubt that appellant joined a conspiracy to commit murder. This appeal follows.

II.

ANALYSIS

Appellant argues the evidence is insufficient to support the trial court's finding that an agreement existed between him and Boyd to kill the victim. Appellant acknowledges that he and Boyd acted in concert when they opened fire on the victim, but contends the record is devoid of evidence establishing a "meeting of the minds" between them. Appellant notes that Narwood, a

witness for the Commonwealth whom the trial court found to be credible, did not provide any testimony of a plan between the two to kill the victim.

In opposition, the Commonwealth argues the circumstantial evidence supports a finding that appellant knew of Boyd's intent to kill the victim and joined in that attempt by shooting the victim as soon as he gained control of his firearm. The Commonwealth also points to appellant's knowledge of the dispute between Boyd and the victim, his affiliation with the same gang as Boyd, and his decision to bring a firearm when he and Boyd went to the apartment complex.

When the sufficiency of the evidence is challenged on appeal, we "must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). "'The judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Wilkins v. Commonwealth, 18 Va. App. 293, 295, 443 S.E.2d 440, 442 (1994) (en banc) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

The "reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979)). Instead, we ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

"Code § 18.2-22, conspiracy to commit a felony, is violated when two or more persons agree to commit a felony offense, regardless of whether any act in furtherance of the underlying crime has been performed." Jones v. Commonwealth, 279 Va. 295, 301, 687 S.E.2d 738, 741 (2010). "There can be no conspiracy without an agreement, and the Commonwealth must prove beyond a reasonable doubt that an agreement existed." Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978). "An agreement requires plurality of intent, a meeting of the minds." Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 49 (1991). "Proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy." Combs v. Commonwealth, 30 Va. App. 778, 787, 520 S.E.2d 388, 392 (1999). "[A] conspiracy may be inferred from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." Id. at 787, 520 S.E.2d at 392-93. "'Where it is shown that the defendants by their acts pursued the same object, one performing one part and the other performing another part so as to complete it or with a view to its attainment, the jury will be justified in concluding that they were engaged in a conspiracy to effect that object.'" Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d Conspiracy § 42 (1979)).

When a conviction is based on circumstantial evidence, the evidence "must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence." Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). The Commonwealth, however, is only required to exclude hypotheses of innocence that flow from the evidence. See Goins v. Commonwealth, 251 Va. 442, 467, 470 S.E.2d 114, 130 (1996). In other words, "once the conflicts in the evidence have been resolved[, if] the evidence is equally susceptible to two or more constructions, one of which would support conspiracy and another which would not, the fact finder is not free arbitrarily to select that theory of conspiracy."

Feigley v. Commonwealth, 16 Va. App. 717, 724, 432 S.E.2d 520, 525 (1993). Indeed, "'[w]hile a conviction may properly be based upon circumstantial evidence[,] . . . [t]here must be an unbroken chain of circumstances proving the guilt of the accused to the exclusion of any other rational hypothesis and to a moral certainty.'" McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 400 (2009) (quoting Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971)).

We hold that the evidence, with all conflicts resolved in favor of the Commonwealth, does not exclude the reasonable hypothesis that appellant spontaneously joined in shooting the victim without any agreement between him and Boyd. A "'defendant may wittingly aid a criminal act and be liable as an aider and abettor, but not be liable for conspiracy, which requires knowledge of and voluntary participation in an agreement to do an illegal act.'" Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting United States v. Bright, 630 F.2d 804, 813 (5th Cir. 1980)). "In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" Id. (quoting United States v. Peterson, 524 F.2d 167, 174 (4th Cir. 1975)).

Here, the trial court expressly found that no agreement existed prior to when the three young men arrived at the apartment complex where the victim was socializing with his friends. This factual finding by the trial court negates any inference that appellant and Boyd entered into a conspiracy to kill the victim. Narwood's testimony does not reveal any verbal agreement between Boyd and appellant to murder the victim once they arrived at the apartment complex. Duck and Houston both confirmed that the victim was not planning on meeting appellant or Boyd that evening. Further, Narwood confirmed that Boyd said that *he* was going to the shoot

the victim; Boyd did not suggest that the *group* shoot him.[2]  See James v. Commonwealth, 53 Va. App. 671, 679-80, 674 S.E.2d 571, 575-76 (2009) (holding the evidence supported a finding that the defendant had an agreement to commit robbery where his testimony referred to his compatriot as an integral part of a plan to frighten the victim into relinquishing her personal property at the sight of "*two guys* against a girl").  The record is devoid of any conversation in which Boyd related his desire to shoot the victim *and* appellant agreed to help carry out that deed.  It is therefore equally plausible that appellant merely aided and abetted Boyd in the murder of the victim without Boyd's prior knowledge or consent.  Accordingly, appellant's conviction for conspiracy to commit murder is reversed.

III.

CONCLUSION

The evidence does not exclude the reasonable hypothesis of innocence that appellant was merely aiding and abetting the commission of the murder of the victim.  Because the evidence does not establish beyond a reasonable doubt that appellant and Boyd entered into an agreement to kill the victim, the evidence is insufficient as a matter of law to support his conviction for conspiracy to commit murder.  Accordingly, we reverse appellant's conviction and dismiss the indictment.

Reversed and dismissed.

---

[2] The trial court, when summarizing the sequence of events leading up to the shooting, emphasized the importance of the statement, "we're going to pop a nigger."  However, Narwood explicitly testified that Boyd said, "I'm going to pop that nigger."  To recast this statement to infer appellant's participation is plainly wrong and without evidence to support such an inference.  E.g., Smith v. Commonwealth, 282 Va. 449, 455, 718 S.E.2d 452, 455-56 (2011).