# COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia

DONNELL DOWNEY

v.      Record No. 0600-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
APRIL 4, 2023

FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Charles E. Haden for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

The trial court convicted Donnell Downey (appellant) of first-degree murder, conspiracy to

commit burglary, conspiracy to commit robbery, burglary, attempted robbery, and three counts of

use of a firearm in the commission of a felony. The court also found appellant guilty of violating

the terms of his pretrial bond. On appeal, appellant contends that the evidence is insufficient to

support his convictions. He also argues that his indictment for attempted robbery cited the wrong

statute, and therefore, he was found guilty of a "non-existent offense." Finally, he asserts that the

court erred by sentencing him to "[1] year in prison" for violating the terms of his pretrial bail, to 20

years of incarceration for attempted robbery, and to 20 years of incarceration for conspiracy to

commit robbery because the sentences "exceed the maximum penalty allowed by statute." For the

following reasons, we affirm appellant's convictions but remand the case for a new sentencing

hearing. *See Rawls v. Commonwealth*, 278 Va. 213, 221-22 (2009).

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND

On appeal, we state the facts in the light most favorable to the Commonwealth. *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021). In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

O.A., an eight-year-old child, was shot and killed during a residential burglary and attempted robbery on January 21, 2019. O.A. lived with his father, Orlando Anderson, and his paternal grandmother, Linda Anderson, in King William County.

On the night of January 21, O.A. and his grandmother were asleep in her bedroom, and Anderson was in his room. Anderson heard a loud noise and discovered that two masked intruders had broken into his home. He grabbed a shotgun and attempted to shoot, but his gun jammed. The intruders then shot at Anderson as they ran out of the back door. Anderson chased them and managed to fire one round from his shotgun. As he returned inside, Anderson heard Linda yell that O.A. had been shot. Anderson and Linda rushed O.A. to the hospital, where he later died from a single gunshot wound to the head.

During a forensic investigation of Anderson's home, police recovered several "Federal Brand, caliber .9 millimeter Luger" cartridge casings, which a later analysis confirmed were all fired from the same gun. Appellant's DNA was found on the cartridge casings. Several bullets recovered at the scene also had been fired from a Glock pistol.

On the afternoon of January 21, Trevon Holmes[1] and his cousin, Charles Coleman, drove to Keith Hargrove's residence in Richmond to purchase marijuana. While there, Holmes saw

---

[1] At appellant's trial, Trevon Holmes was identified as having the surname "Gresham." However, at a separate joint trial for co-defendants Charles Coleman and Keith Hargrove, he identified himself as "Trevin Holmes."

- 2 -

appellant holding a Glock pistol.  Later that day, Holmes returned home, leaving Coleman, Hargrove, and appellant at Hargrove's house.

State Police Special Agent Martin Kriz interviewed appellant several times during his investigation.  Appellant admitted that he had been with Coleman and Hargrove on January 21. Coleman told appellant that "there was going to be money and drugs and they were going to take that money and drugs and split it between themselves."  Appellant traveled from Richmond to Anderson's residence with Coleman and Hargrove, and described in detail how they broke in, including that appellant entered the house after Coleman kicked in the door.  Appellant told Special Agent Kriz he was carrying a firearm when he entered Anderson's house but denied firing it.  When confronted with the DNA evidence, appellant admitted that he had supplied ammunition to Coleman and Hargrove as part of their plan.

At trial, appellant acknowledged that he had repeatedly admitted his involvement in the crimes during the investigation; however, he claimed that he lied to police because he thought he might be having a heart attack and "would have said anything to get [a] medical bond."  He admitted that he was in Richmond with Coleman and Hargrove and he knew they were planning "some scheme or scam," but he denied participating and stated that he did not leave Richmond that night.  Finally, he explained that he could provide the detailed account of the crimes to Special Agent Kriz only because he heard Coleman and Hargrove discuss the crimes the next day.

FBI Special Agent Jeremy D'Errico created a report based on data collected from cell phones belonging to Holmes, Coleman, Hargrove, and appellant.  The data showed that all four phones were in the same area in Richmond around 10:15 p.m. on January 21, consistent with Holmes's testimony.  Holmes's phone left the area shortly before 11:00 p.m. and traveled north into Hanover County.  Between 11:00 p.m. and 11:40 p.m., data from Hargrove's phone established that Hargrove traveled from Richmond to a location near Anderson's house around the time of the

intrusion. The other phones did not have any recorded data. By approximately 12:30 a.m. on January 22, Hargrove's phone was back in Richmond.

The court rejected appellant's testimony and convicted him of the charged offenses.

ANALYSIS

I. Sufficiency of the Evidence

Appellant first argues that the evidence was insufficient to support his convictions because the Commonwealth "failed to prove that [he] participated in the offenses or otherwise acted in concert with the others to commit the offenses." Additionally, appellant contends that "there was no proof of an agreement" to support his conspiracy convictions.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512).

Appellant admitted at trial that he knew Coleman and Hargrove were planning "some scheme or scam." Although he claimed at trial that he did not participate, he repeatedly admitted his involvement during his interviews with the police. Appellant provided details about the crimes—such as the layout of the house, the point of entry, and the gunfire exchange with Anderson—that permitted the fact finder to infer he was present when the crimes occurred. The

court permissibly rejected appellant's testimony that he lied to the police to get a bond and instead reasonably credited his prior inculpatory statements. *See Sierra v. Commonwealth*, 59 Va. App. 770, 784 (2012) ("[T]he trial court . . . 'was at liberty to discount [appellant's] self-serving statements as little more than lying to "conceal his guilt," and could treat such prevarications as "affirmative evidence of guilt."'" (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010))). Moreover, the evidence that Holmes had seen appellant with a gun earlier that evening and the presence of appellant's DNA on the bullet casings found in Anderson's home support the court's conclusion that appellant actively participated in the crimes and acted in concert with the others.

Additionally, ample evidence supports appellant's conspiracy convictions.

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" *Speller v. Commonwealth*, 69 Va. App. 378, 389 (2018) (quoting *Wright v. Commonwealth*, 224 Va. 502, 505 (1982)). "Proof of an explicit agreement," however, "is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy." *Combs v. Commonwealth*, 30 Va. App. 778, 787 (1999). Indeed, "it is a rare case where any 'formal agreement among alleged conspirators' can be established." *Pulley v. Commonwealth*, 74 Va. App. 104, 120 (2021) (quoting *Carr v. Commonwealth*, 69 Va. App. 106, 118 (2018)). Accordingly, the fact finder may infer a conspiracy "from the overt actions of the parties, and a common purpose and plan may be inferred from a development and collocation of circumstances." *Combs*, 30 Va. App. at 787 (quoting *McQuinn v. Commonwealth*, 19 Va. App. 418, 425 (1994)). Thus, when "the defendants 'by their acts pursued the same object, one performing one part and the others performing another part so as to complete it or with a view to its attainment, the [fact finder] will

- 5 -

be justified in concluding that they were engaged in a conspiracy to [effect] that object.'" *Pulley*, 74 Va. App. at 120 (first alteration in original) (quoting *Carr*, 69 Va. App. at 118).

Appellant admitted that he went to Anderson's residence with Coleman and Hargrove and entered the house after Coleman kicked in the door. He also admitted that he provided ammunition to the others. The cell phone location data corroborated appellant's pretrial confession. From this evidence, the court reasonably concluded that appellant was "engaged in a conspiracy" to commit robbery and burglary. *Id.* (quoting *Carr*, 69 Va. App. at 118).

## II. Error in the Indictment

Appellant next argues that the "court erred in finding [him] guilty of the non-existent offense of attempted robbery in violation of . . . Code § 18.2-90." The indictment for the attempted robbery charge states:

> The Grand Jury in and for the County of King William charges that on or about January 21, 2019, in the County of King William, the defendant did attempt to rob O.A. of U.S. Currency and/or personal property, by means of violence, assault, putting him in fear of serious bodily harm, threats, or by the threat or presenting of a firearm.
>
> **Attempted Robbery**
>
> In violation of Virginia Code § 18.2-90, a Class 2 Felony, BUR-2212-F2.

Appellant notes that "[t]here is of course no such offense as attempted robbery in violation of . . . Code § 18.2-90" and that "the offense of attempted robbery is correctly described as an offense in violation of . . . Code § 18.2-58 and . . . Code § 18.2-26."[2] Appellant contends that because "it appears from the court's orders that [he] was charged with, convicted, and sentenced for a non-existent offense" of attempted robbery in violation of Code § 18.2-90, "the purported orders are void and the indictment for attempted robbery . . . should accordingly

---

[2] The conviction and sentencing orders also erroneously reference Code § 18.2-90.

be dismissed." Appellant concedes that he did not present this issue to the trial court but asks this Court to invoke the ends of justice exception to Rule 5A:18.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "Virginia courts applying the ends-of-justice exception require a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513). "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

"The purpose of an indictment is to provide the accused with notice of the cause and nature of the accusations against him." *Commonwealth v. Bass*, 292 Va. 19, 28 (2016). "The requirement that felony prosecutions proceed by indictment or presentment is statutory, not constitutional, and the accused may waive the right to be tried by such." *Id.* Thus, "[e]rror in the citation of the statute[,] . . . or omission of the citation, will not be grounds for dismissal of an indictment or information, or for reversal of a conviction, unless the court finds that the error or omission prejudiced the accused in preparing his defense." Rule 3A:6(a).

Although the indictment here cited the wrong statute, it accurately listed the charged offense and the elements of that offense and thus sufficiently put appellant on notice of the cause and nature of the accusations against him. *See id.*; *George v. Commonwealth*, 242 Va. 264, 280-81 (1991); *Stamper v. Commonwealth*, 228 Va. 707, 712-13 (1985). *Cf. Ellis v. Commonwealth*, 75 Va. App. 162, 171-72 (2022) (affirming a conviction for driving with a suspended license where the summons provided sufficient notice of the "gravamen of the offense," despite a "misrecital of the ordinance number"). Appellant also fails to identify how he was prejudiced by the error. Because we conclude that the record shows that the indictment accurately informed appellant of the charged offense despite the error in the indictment and he suffered no identifiable prejudice, we find no miscarriage of justice. Therefore, the ends of justice exception does not apply, and Rule 5A:18 bars our consideration of appellant's argument on appeal.

### III. Sentence

Finally, appellant argues that his sentences for attempted robbery, conspiracy to commit robbery, and for violating the conditions of his pretrial release "exceed the maximum penalty allowed by statute and are therefore void." The court sentenced appellant to "[i]ncarceration in jail for one (1) year for the charge of bailee violation release/pretrial condition," to "twenty (20) years for the charge of attempted robbery," and to "twenty (20) years for the charge of conspir[acy] to commit robbery." Appellant concedes that he did not present this argument to the court below but again asks this Court to address the issue under the ends of justice exception to Rule 5A:18.

"[A] sentence imposed in violation of a prescribed statutory range of punishment is void *ab initio*[.]" *Fletcher v. Commonwealth*, 72 Va. App. 493, 511 (2020) (alterations in original) (quoting *Rawls*, 278 Va. at 221). "Denying [a defendant] his liberty on the basis of a void

sentence would impose a grave injustice upon him[.]" *Id.* (alterations in original) (quoting *Gordon v. Commonwealth*, 61 Va. App. 682, 685 (2013)).

The Commonwealth concedes that attempted robbery is "a Class 4 felony punishable by a sentence of two to ten years in prison" and that conspiracy to commit robbery is "a Class 5 felony punishable by a sentence of one to ten years in prison."[3] *See* Code §§ 18.2-10(d), (e), 18.2-22(a)(2), 18.2-26(1), 18.2-58. Thus, the Commonwealth agrees with appellant that his sentences for attempted robbery and for conspiracy to commit robbery "should be reversed and the matter should be remanded solely for the imposition of . . . new sentence[s]." While we "examine independently the errors confessed," the "considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight." *Copeland v. Commonwealth*, 52 Va. App. 529, 532 n.3 (2008) (quoting *Young v. United States*, 315 U.S. 257, 258-59 (1942)).

Upon reviewing the record, we agree that appellant's sentences for attempted robbery and conspiracy to commit robbery exceed the statutory maximums and are therefore void *ab initio*. *See Fletcher*, 72 Va. App. at 511. Accordingly, "'application of the ends of justice exception is, therefore, fully justified' here." *Id.* (quoting *Gordon*, 61 Va. App. at 685). A "criminal defendant . . . is entitled to a new sentencing hearing" where "a sentence [is] imposed in violation of a prescribed statutory range of punishment." *Rawls*, 278 Va. at 221. Therefore, we vacate appellant's sentences for the attempted robbery and conspiracy to commit robbery convictions and remand to the trial court for a new sentencing hearing.

---

[3] We note that under Code § 18.2-10(d), punishment for Class 4 felonies may also include "a fine of not more than $100,000" and that under Code § 18.2-10(e), Class 5 felonies may also be punishable, "in the discretion of the jury or the court trying the case without a jury, [by] confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both."

Appellant further asserts that the "one year in prison" sentence imposed for the misdemeanor bailee violation exceeded the statutory maximum. *See* Code § 18.2-11 (stating that "authorized punishments" for Class 1 misdemeanor convictions include "confinement in jail for not more than twelve months"). We note that the court sentenced appellant to "[i]ncarceration in *jail* for one (1) year for the charge of bailee violation," not prison. (Emphasis added). Nevertheless, we assume without deciding that the "one year" sentence, rather than the "twelve months" authorized maximum for a Class 1 misdemeanor, was error and remand to the court for resentencing on the bailee violation conviction to comport with the applicable statute.[4] *See* Code § 18.2-11.

## CONCLUSION

For these reasons, we affirm appellant's convictions and remand solely for resentencing for the attempted robbery, conspiracy to commit robbery, and bailee violation convictions.

*Affirmed and remanded.*

---

[4] The new sentencing order should also reflect the correct code sections for appellant's attempted robbery conviction.